EDWARD KUCZON *vs.* TEOFILA TOMKIEVICZ.

Third Judicial District, New Haven, January Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and WEBB, Js.

It is entirely proper and in some cases essential for the proper instruction of the jury, that the trial court should recite the testimony of a party and his claims in connection therewith, although such recital necessarily operates to disparage the claims of his opponent.

The charge of the court on the question of the exercise of reasonable care by the plaintiff and the defendant, reviewed and *held* to have been appropriate and adequate to the situation before the jury.

It is the province of the court to determine the testimonial competency

of children as a preliminary to accepting them as witnesses; and such determination is discretionary and not to be disturbed on appeal, except for the misapplication of a principle of law, or a manifest abuse of discretion.

The competency of a child offered as a witness involves his mentality and moral maturity, having special regard to the understanding of the nature of an oath and of the consequences of false swearing. The belief in a Supreme Being and in future punishment for false swearing, is neither necessary to, nor conclusive of, his competency. He should be sufficiently mature to receive correct impressions by his senses, and to recollect and narrate intelligently; also to appreciate the moral and legal duty of a witness to tell the truth.

Argued January 25th—decided March 31st, 1924.

ACTION to recover damages for personal injuries alleged to have been caused by the negligence of the defendant's servant in the operation of her automobile, brought to the Superior Court in New Haven County and tried to the jury before *Avery, J.;* verdict and judgment for the defendant, and appeal by the plaintiff. *No error.*

*Charles S. Hamilton,* with whom, on the brief, was *Morris M. Wilder,* for the appellant (plaintiff).

*Cornelius J. Danaher,* for the appellee (defendant).

KEELER, J. This is an action brought by a minor, by his next friend William Kuczon, to recover for an injury arising out of the alleged negligent operation of an automobile driven by defendant's son. The complaint alleges that defendant was engaged in the business of baking and selling bakery products, using therein a Ford delivery car for transporting the same; that defendant's son was her servant in this regard, and was acting within the scope and line of defendant's business at the time of the alleged collision with plaintiff; that on October 23d, 1920, defendant's son was delivering with this motor-vehicle on Olive Street in

the city of Meriden, and while so engaged at the intersection of Pleasant Street and Olive Street negligently ran into the plaintiff, who was then in the exercise of due care, causing him to fall on the hard paved street and to be thrown under the hind wheel of the car, which thereupon ran over the plaintiff; that plaintiff thereby was bruised and crushed and suffered bruises, contusions and sprains injuring his nerves, flesh and bones, causing him great pain and distress, crippling his legs and causing permanent and incurable injuries. The defendant's answer was a general denial.

The issues in the instant case, then, are three, covering the question of agency of the son, his negligence, and plaintiff's freedom from contributory negligence. A finding by the jury on any one of these in favor of defendant would defeat plaintiff's recovery. The plaintiff's claimed proof, as detailed in the finding of the trial court, would have justified a verdict in his favor. The proofs of defendant, if found true, would have necessitated a verdict favorable to her.

The jury found a verdict for defendant, and plaintiff's appeal therefrom assigns error in the failure of the court to give certain instructions, in giving certain other instructions, and in excluding certain testimony offered by the plaintiff.

Plaintiff claims error in the refusal of the trial court to give his second requested instruction, which was to the effect that defendant's negligence was to be determined by considering the circumstances surrounding the collision, the situation of Pleasant Street and Olive Street, at the intersection of which the collision took place, the rate of speed of the car, and whether its driver kept a reasonable lookout for children likely to be at that point. While the court did not give this request in the exact terms asked for by the plaintiff,

it did plainly and explicitly in the course of the charge bring to the attention of the jury every essential claim contained in the request above summarized. The gravamen of plaintiff's complaint is that "instead of" his requested charge, the court instructed the jury that "on the second matter, the matter of negligence, you can't surmise, gentlemen, guess or speculate in this matter. Now, for instance, in the course of that car rounding the corner, the evidence is not very full or complete. It is not very full or complete as to whether the car did cut the corner at all, nor is there full or complete evidence that it had anything to do with striking this child—if he was struck, nor is there very full or complete evidence as to any particular act of negligence."

Having regard to the pleadings and the claimed proofs stated in the record, we fail to see that the part of the charge above quoted was other than a legitimate comment upon the evidence in the case. It certainly was not brought into such relation to the plaintiff's requested instruction as to have been given instead of it or as qualifying it. The plaintiff's brief and argument supporting this contention, treats the claimed proofs and the deposition of one Sieracki, which is made part of the finding, but evidently only as a convenient way of stating claimed testimony, as if the matters considered were facts actually found and not statements of claimed proof, and goes on to argue the question as one of fact in a way only appropriate to an argument to the jury, or at most to an appellate tribunal considering the facts upon a claim that the verdict was contrary to the weight of evidence. We can find nothing erroneous in the conduct of the trial court in this regard.

The plaintiff's third request was that if the driver of the car "knew, or by the exercise of reasonable care

might have known, that a young child the age of the plaintiff was crossing Olive Street at the time of the accident, and that the child was apparently unaware of the approach of the defendant's automobile, and that the agent and servant of the defendant operated the automobile so negligently and recklessly that it collided with the plaintiff and inflicted the injuries in question, when by the exercise of reasonable care the said servant of the defendant might have avoided the accident, then you are justified in finding that the defendant was negligent."

This request is adapted to explain the doctrine of intervening negligence, if the evidence in the case justified its application. It is not claimed by plaintiff in his argument or brief that this doctrine is necessarily involved, and certainly it is not clearly indicated by anything in the record. In their brief plaintiff's counsel say that it is unnecessary "to label it as the doctrine of last clear chance," referring to their claim as to the situation involved, but that the instruction was appropriate as a general statement of defendant's duty to use due care. If this is all that is claimed for this instruction, the court clearly did not err in omitting to give it, for the jury was carefully instructed in the charge upon the question of due care.

Under this head it is further urged that the court made "disparaging remarks of the plaintiff's case" when it said: "On the other hand, the testimony of the defendant is that he did not see the child at all and didn't strike him. He said he didn't know where he came from, and, if he was struck, he was struck by some other automobile, or possibly he may have fallen there, or possibly he may have climbed on this same automobile and fallen off the side of it without the driver's knowledge."

It is perfectly clear that the court is here reciting the

testimony of the defendant and her claim in connection therewith, a proceeding entirely correct and necessary for the proper instruction of the jury. That a defendant's testimony should disparage the claim of a plaintiff is not unusual, and any discredit arising from the situation certainly is not created by the court's recital of the testimony.

But the plaintiff further insists that there is nothing in the claimed proof of the defendant that warranted the discussion of the evidence just quoted. This is not the case, since in paragraph eight of the finding the court states that defendant claimed to have proved that the driver "kept a proper lookout, gave proper warning, operated the automobile at not to exceed five miles per hour while going up hill on Pleasant Street and up Olive Street where the grade is very steep, and that he did not run over or injure said child."

But this discussion of evidence by the court is also justified by a paragraph (four) in the plaintiff's claimed proof, in which it is stated that the driver drove the car "down Pleasant Street in a southerly direction, and when it reached the middle of Olive Street turned sharply to the left at a high rate of speed, and there knocked down and ran over the plaintiff, and passed on as quickly as possible up Olive Street and into Oak Street."

Plaintiff's fourth request to charge was that "so far as contributory negligence is concerned, an immature child is expected to use only such judgment and have such experience as children of similar age and experience would have under like circumstances." The charge of the court upon this point was identical in purport with that requested, in almost the same words, and entirely correct. The specific objection is that in the court's charge, this item was preceded

by a general statement of the duty of a plaintiff himself to use the care of an ordinarily prudent person as a prerequisite to recovery, and thus weakened the effect of the reference to immature persons. To some such statement the defendant was entitled as a definition of a cause of action founded on negligence, and the further appropriate statement of the application of the rule to children of immature years, immediately following, emphasized this factor of the situation rather than weakened its effect.

The fifth request of the plaintiff is concerned with the right of plaintiff to cross the street when no car was near, with the question whether plaintiff would have been apt to see the car as it came down Pleasant Street, and that even if the plaintiff was negligent in crossing the street when he did, his negligence must have been such as to essentially contribute to the accident, and that if the driver knew, or in the exercise of reasonable care should have known, that plaintiff was crossing and could have avoided the collision, plaintiff might still recover. This, of course, is a statement of the doctrine of proximate cause, and this topic was clearly presented in the court's charge, so that plaintiff had the full benefit of it in connection with the evidence.

The sixth request to charge is merely a repetition of the fourth request, stated from the point of view of contributory negligence, and is disposed of by what we have said in connection with the earlier request.

Passing to errors assigned as to portions of the charge as given, we note that the second assignment is concerned with the claim made in regard to the second requested charge, is treated by counsel in connection with it, and has been heretofore sufficiently discussed in this opinion. There is no error in this regard.

In the third assignment of error the claim is made that the court erred in suggesting in the language of

the charge heretofore quoted in full, that the plaintiff was run down by an automobile other than that of plaintiff, or fell down or perhaps climbed on the car without the driver's knowledge, when there is nothing in the claimed proofs supporting such suggestions, and that hence the court invited the jury to speculation as to how the occurrence happened. What we have heretofore said in discussing this paragraph of the charge disposes of the plaintiff's contention in this regard.

The fourth assignment of error is directed to the part of the charge which reads: "Of course, gentlemen, like everything else, matters can be established by circumstantial as well as by direct evidence, provided the circumstantial evidence sufficiently establishes the fact. That is for you to say, from the weight and probability of the testimony. The court doesn't desire to direct you in that particular." This, the plaintiff contends, left the matter of circumstantial evidence in a vague, uncertain and indefinite manner in the minds of the jury, and was likely to lead it to infer that circumstantial evidence was worthless unless it directly proved the fact to be established. We do not regard the extract from the charge above quoted as open to attack in the manner made by the plaintiff, but consideration of the matter will be helped by continuing the quotation to the end of the paragraph and including all that was said in this regard. The court went on to say: "The mere fact that a matter is circumstantial doesn't necessarily deprive it from being found. It must be found by evidence. If it is circumstantial evidence, the circumstantial evidence must be such that a review of all the evidence in the case reasonably and fairly leads to a conclusion and preponderates. If it is a mere speculation and a mere probability and uncertainty, why, no verdict should

be found upon it.'' The charge on this topic, taken
as a whole, is neither uncertain nor misleading, and
as far as can be gathered from the record, adequate,
especially in view of the fact that the attention of the
court was not drawn to this phase of the case by any
request to charge made by the plaintiff.

The fifth, sixth and seventh assignments of error
are directed to the exclusion of the testimony of the
plaintiff, and of Joseph Golanski and Teddy Kozmar-
sky, all children of tender age. A verdict was given
defendant on May 29th, 1923, and judgment had
thereon the same day; the injury to the plaintiff oc-
curred October 23d, 1920. At the time of the hearing
Golanski was eight years old, Kozmarsky seven, and
the plaintiff six. As to the qualifications of Golanski
the court makes the following finding: "During the
trial, the plaintiff called one Joseph Golanski, claiming
that he was eight years of age, an eye witness. The
defendant objected to the witness because it did not
appear that he was qualified to testify, but before the
witness was sworn the court caused him to be placed on
the witness stand, and from the appearance of the wit-
ness, his manner of answering the questions propounded
to him by counsel, under the direction of the court, and
by the court, as well as from the answers to said ques-
tions themselves, the court determined he was not of
sufficient intelligence to be qualified to testify and was
not of sufficient intelligence to understand and did not
understand the nature and obligation of an oath. The
court thereupon ruled that the witness should not be
sworn and excluded him from testifying, the plaintiff
duly excepting. In the course of the examination of the
witness by the counsel in the presence of the court, he
testified as to his age, that he went to a Polish school
and that he understood the nature of an oath. He
then was inquired of and answered as follows:—

Kuczon *v.* Tomkievicz.

"Q. What will be done to you? A. God will punish me. Q. How will you be punished? A. A sin. Q. For your sins? A. Yes. Q. Do you understand what it is to take an oath, to stand up here and say you will tell the truth, and the whole truth and nothing but the truth? Do you understand? A. Yes. Q. What does it mean? [Pause]. Well, do you understand this that if you don't—The Court: I will ask him a question. Do you understand what it is to be sworn as a witness in a case in court? Look at me. Do you understand it, what it is to be sworn as a witness in a case in court? The witness: Yes. [Questions by the court.] Q. What is it? Tell me what it means. [Pause]. Well, let me ask you this? If you don't tell the truth as a witness what will happen to you? A. God will punish me. Q. God will punish you. What other punishment will you have? A. Get hurted or something. Q. You will get hurt or something. Is that the only punishment you will get? A. Yes. Q. I don't think this witness is qualified. I don't think he is qualified. . . . Mr. Hamilton: Well, it seems he believes in a Supreme Being, and it seems he will be punished if he does not tell the truth. The Court: He does not know the nature of what the punishment is. The punishment for perjury. I don't think he understands what it is. I don't think he is qualified." The testimony of the other two children was substantially the same.

It will be seen from the above that all of these three boys were in very much the same position as regards the standpoint from which their intelligence must be considered, and that they answered questions practically identical in very much the same way. The only material difference among them was that of age. So we may properly consider their mentality and moral maturity as bearing upon their testimonial capacity,

without considering the answers given by each of them, in detail.

The competence of a person offered as a witness, apart from any statutory disqualification, involves his mentality and in the case of a young child his moral maturity, having special regard to the understanding of the nature of an oath and of the consequences of false swearing. The general rule which has probably obtained for many years throughout the country is, that regarding the testimonial capacity of children under fourteen years of age, inquiry is to be made, "and if he appears to have sufficient natural intelligence, and to have been so instructed as to comprehend the nature and effect of an oath, he is admitted to testify, whatever his age may be. The discretion of the trial court should be allowed to control in determining whether a given child is competent." 1 Greenleaf on Evidence (16th Ed.) § 367. A somewhat earlier and less comprehensive rule is given in 1 Swift's Digest, p. 739, wherein the author says children may be examined as to their capacity, "and if they know the distinction between right and wrong, have an idea of the Supreme Being, and a future state of rewards and punishments, they are admissible" as witnesses. This court has said in *Atwood* v. *Welton*, 7 Conn. 66, 73: "The doctrine, as now established, in this country and in England, is, that if a person believes in a God, the avenger of falsehood, and in a future state of rewards and punishments, he may be a witness, and not otherwise." This rule has received statutory modification, in that no person as a prerequisite to testifying need believe in the existence of a Supreme Being. General Statutes, § 5705. Inferentially this disposes of any necessity for belief in a future state of rewards and punishments, as one idea can hardly be disassociated from the other. The rule applied by the trial court and approved by us in *State*

v. *May*, 79 Conn. 315, 316, 64 Atl. 833, probably correctly represents the doctrine resultant from our ancient rule as modified by statute, where, as to a child of six years, "the court found that the child understood the nature of an oath, and that she was of sufficient intelligence and understanding to be sworn as a witness." To the same effect is 3 Wigmore on Evidence (1st Ed.) § 1821: "The capacity of the infant must therefore depend upon the circumstances of its understanding as exhibited in each instance, and is to be determined by the trial court."

The fact of course is still admissible that a child believes in a Supreme Being and in future punishment for false swearing, and it might in a given case be a valuable aid in determining the question of competence. But even as such beliefs are not a necessity, neither is their possession conclusive. A person may believe in punishment for falsehood, and still not fully understand the obligation of an oath.

Counsel for plaintiff has brought to the attention of the court, with liberal quotation, a group of cases in which the testimony of very immature children has been received, where the answers of the child in each case show a similarity and in some of the cases a decided similarity to the questions and answers in the present case, as above quoted, and claims that the instant case is within the purview and reasoning of the cases cited to the extent that they are persuasive to the point of being controlling. It may be conceded that if the trial court had admitted the testimony of the witnesses offered in the present case, finding that they understood the nature, obligation and sanctions of an oath, no error could have been predicated upon such action. But there is the further consideration, that in deciding whether these children were sufficiently intelligent to qualify as witnesses, not only the facts devel-

oped by the examination are to be considered by the
trial court but also the mentality and moral maturity
of the proposed witnesses derived from their appearance
and their manner in answering questions put to them.
It has been uniformly held that it is the province of
the court to determine testimonial competence of chil-
dren as a preliminary to accepting them as witnesses,
and that such determination is discretionary, not to be
disturbed on appeal, except for the misapplication of a
principle of law, or a manifest abuse of discretion. "We
think the examination of an infant as to his competency
to testify, and the determination of the question
whether he is competent, are very much under the dis-
cretion of the court before whom the case is heard, and
not in general a subject of exceptions removing that
question to a higher court. If an erroneous view of any
legal principle was taken upon such hearing, that might
properly be brought before us for revision, but not the
judgment of the court as to the sufficiency of the proof
to satisfy the court of the ability of the witness to un-
derstand the nature of an oath, and of the possession
of sufficient intelligence to testify in the case." *Com-
monwealth* v. *Mullins*, 84 Mass. (2 Allen) 295, 296.
Later Massachusetts cases are in accord. As to the
decision of the trial court as to the competence of a
child witness, the Supreme Court of the United States
has held as follows (*Wheeler* v. *United States*, 159 U. S.
523, 524, 525, 16 Sup. Ct. 93): "The decision of this
question rests primarily with the trial judge, who sees
the proposed witness, notices his manner, his apparent
possession or lack of intelligence, and may resort to any
examination which will tend to disclose his capacity
and intelligence as well as his understanding of the ob-
ligations of an oath. As many of these matters cannot
be photographed into the record the decision of the
trial judge will not be disturbed on review unless from

that which is preserved it is clear that it was erroneous. These rules have been settled by many decisions, and there seems to be no dissent among the recent authorities." It is "the generally accepted principle that there can be no particular age at which a child invariably becomes incompetent; and it should follow that the discretion of the trial court, in view of the circumstances of each case, should be left to determine for itself. The principle upon which their rulings should proceed is that the child should be sufficiently mature to receive correct impressions by its senses and to recollect and narrate intelligently; and also, it is said, to appreciate the moral duty to tell the truth." 1 Greenleaf on Evidence (16th Ed.) § 370d. To the same effect is Wigmore on Evidence, Vol. 1 (1st Ed.) § 507. By text writers and in decisions, the questions of incompetence by reason of insanity and of immaturity have been uniformly treated as resting upon the same ground in the determination of the trial court. In *Holcomb* v. *Holcomb*, 28 Conn. 177, we held that the question of insanity of a person at the time he is produced as a witness goes to his competence, and is a preliminary question to be decided by the court.

In the instant case the trial court had before it the determination of the intelligence of the three children, and had not only to consider their answers to the questions propounded to them as evincing correct moral principles, but also their comprehension of the matters involved, to be derived not only from their answers but from the way in general in which they disclosed mental capacity and moral maturity. It is evident that much that was involved in the examination could not be made to appear on the record. The judge was here finding an ultimate fact, the competence of the offered witnesses, made up of conclusions from the whole situation, from facts and conduct observed dur-

ing the examination, as well as from the questions pro-
pounded and which stand in the record. The state-
ments of the judge are not here to be considered merely
as furnishing that introductory setting for the evidence
following in the record, and required by the rules of
practice. He was passing upon a preliminary question
of fact, upon which his was the duty to pass and not
that of the jury.

The opinion which we might derive from the printed
record alone, though it might differ from the conclusion
arrived at by the trial judge, would not suffice to set
the latter aside, unless we are prepared to say that a
clear abuse of discretion has occurred. The trial court
had an opportunity which we have not, from all the
circumstances surrounding the examination, to de-
termine whether the ideas indicated by the children's
answers represented their real mental and moral equip-
ment, or whether the answers represented the results of
recent preparation for the examination, and were mere
efforts of memory. Careful and conscientious in-
struction of young children who are prospective wit-
nesses, honestly conducted by parents or by upright
counsel as to the nature, obligation and sanctions of an
oath is entirely proper. Drilling such children mechani-
cally to commit to memory certain matters in order to
pass the judge would deserve a different characteriza-
tion. The trial judge had peculiar facilities for solving
this problem.

We cannot see that the trial court misapplied any
principle of law, or, upon the facts appearing of record,
so far departed from a reasonable determination as to
make its conclusion so manifestly in excess of a proper
discretion as to be erroneous.

There is no error.

In this opinion the other judges concurred.