BARBARA LOUISE FRISBIE, ADMX.
vs.
ANTHONY F. SCHINTO, ET AL.

Superior Court       Fairfield County       File #45989
Present:  Hon. ALFRED C. BALDWIN, Judge.
Mead & Mead,                Attorneys for the Plaintiff.
Russell C. Roberts,         Attorney for the Defendant.

## MEMORANDUM FILED MARCH 19, 1935.

BALDWIN, J.  The accident resulting in the death of plaintiff's decedent occurred very shortly after ten o'clock on the night of July 3rd, 1934, on the Post Road in Darien about a half or three-quarters of a mile westerly from the railroad underpass.  The highway is a four-lane highway thirty-six feet wide having a shoulder five feet wide on the northerly side.

It was misty and raining, a shower having been in progress for approximately an hour, having somewhat abated at the time.  There was no artificial lighting in this locality.  It was dark and visibility was poor because of the condition of the weather.

The decedent had been driving a Chevrolet truck having a closed-in body, the top of which was black with red sides and doors, of which there were two at the rear end.  He was accompanied by the owner of the truck and the owner's son, a child nine years of age.  They were en route from Norwalk to Stamford, having been driving through the rain storm.

Because of a flat tire on the rear left wheel the decedent drove the truck onto the shoulder at the right of the road and stopped, leaving the left wheels a foot or a foot and a half over the hardened surface or travelled part of the road. When he stopped the truck he stopped the motor and thereupon all lights upon the truck were extinguished, the battery being out of service. There was a reflector three and one-half inches in diameter attached to the left-hand rear door near the bottom of the door and a little to the left of the center of the truck. The truck had been driven through the storm and was dirty. There was substantial evidence that the reflector was so dirty that it destroyed its visibility, and the officer, summoned to the scene and looking for the truck involved could not see the reflector as he approached until he alighted from his car. It was perfectly clean when presented as an exhibit in the trial.

In this position upon the road and with the truck in the condition described the decedent and the owner of the truck and his son awaited in the truck approximately one-half hour for the rain to abate sufficiently to admit of removing the flat tire and placing upon the wheel a good tire.

The decedent was removing the nuts from the lugs upon this left rear wheel when the defendant's car came in collision with him throwing him forward and under or near the forward wheel of the truck breaking four ribs and the scapula, one of the ribs probably puncturing the lung. Pneumonia developed the next day and he died July 9th.

The decedent was fifty-four years old, he had an expectancy of eighteen and a fraction years. There was no evidence that the economic value of his life to his estate up to the time of his death had been of any value. The verdict was for eight thousand five hundred dollars.

This verdict, in so far as negligence of the defendant operator was concerned, must have been based upon the testimony of the witness Huchins, since Ciordano, the owner of the truck, testified that he did not see the injuring automobile until the moment of the impact and could not give its rate of speed, except to say that it was fast and testified that this automobile travelled after hitting the decedent a distance estimated at one hundred feet, whereas at the hearing before the coroner shortly after this accident he testified the automobile travelled after contact with the decedent thirty-five to forty feet.

The witness Hutchins testified he was driving from Bridge-

port to Bronx, N. Y., that he was driving a truck with which he could drive sixty miles an hour, that he overtook defendants who were travelling forty miles an hour or better and that he tried, two or three times to pass the defendants, coming alongside of defendants' car sounding his horn to indicate his desire to pass and that he could not quite make it; that the occupants of defendants' car were talking to each other and not observing where they were driving; that at times she would be to her right and at times to her left, "indirect traffic" that he wanted to pass because at a grade some three quarters of a mile or more further on he might have to shift gears because of slow traffic ahead; that he saw the truck upon which decedent was working and the reflector and the decedent himself working at the rear left wheel when he was five or six hundred feet away, and that when defendants' car was one hundred feet from the decedent he saw then that the defendant operator was going to hit the decedent "because I knew she didn't see where she was going", that he saw a bright object going through the air, and went and got his flashlight and found the object he saw going through the air was a pair of glasses and they were found about twenty-five or thirty feet ahead of where plaintiff was struck. It appeared that the decedent wore glasses.

Although Hutchins saw that the defendant operator when one hundred feet from the decedent, was going to strike him, he sounded no horn to warn decedent of the approaching danger, and drove on three hundred feet past the scene of the accident before he came to a stop. He claimed defendants' car came to a stop one hundred feet beyond the point of contact.

There were other respects in which Hutchins tried to prejudice the jury by testifying to circumstances for which there was no foundation in fact. He would have it appear that he was concerned to see that defendant operator did not "hit and run", but stopped; that he wanted the injured put in defendants's car to be taken to hospital, and that one of the occupants of defendants' car go to hospital, when in fact the defendant operator although she did not see the injured man until after she had stopped, which she did at once, and returned to where he was and then endeavored to stop cars to take him to the hospital, because her car because of tis load and construction was not convenient, and she drove to the hospital and showed every interest and concern.

The defendant operator and the other two in the car with

her were truthful and honest witnesses; their every answer and statement and appearance, both upon the witness stand and in the court bespoke their integrity and the truth of their testimony in the case and made it evidence of worth and weight.

The witness Hutchins was not worthy of belief; his story in its essential features, was "built up" and perjury.

I am fully aware of the functions of the jury and of the court in respect to a situation such as here presented, and I am quite aware that no record can present the picture that the actual observation and listening to the witnesses presents. I am also mindful of the care that should be exercised in disturbing a verdict of the jury and the duty one owes to conscience and that the court should exercise in the interest of justice. This verdict for the reasons given I cannot permit to stand.

But there are other reasons why the verdict should be set aside, and these concern the obvious failure of the court to adequately charge the jury. Although the charge was lengthy, probably too lengthy, I wholly failed to instruct the jury on a very essential feature of the case. A provision of the statute relating to the feature of the case referred to is as follows:

"Each motor vehicle, when standing upon a public highway during the period from one-half hour after sunset to one-half hour before sunrise, shall show at least one light in front, such light to be on the side nearest to the center of the road and shall display at least one red light in the rear, but this provision shall not apply to any motor vehicle in a place and under conditions where there is sufficient artificial light to make such motor vehicle clearly visible from a distance of two hundred feet in every direction." **Subsection (f) Sec. 1598, General Statutes.**

It was conceded that there was no light whatever upon this standing truck, the left wheels of which were from a foot to a foot and a half upon the travelled part of the road and that there was no artificial light whatever in the vicinity. In addition to these conditions the visibility was poor because of the rain and misty conditions; the color of the truck was red which does not readily reflect light or show when light is thrown upon it. The injured man was bent over working upon a wheel,—some distance would be between him and the wheel and he then would be some two or three feet further from the edge of the road than the wheel. With these im-

portant elements in the case, and the statute relating thereto, no instruction was given to the jury concerning this statute or its application and only the most brief reference was made in the whole charge to the absence of any light upon the truck.

"Both parties in every action have the right to expect that the court will direct the jury concerning every question of the law arising in the trial of each case . . . and whether requested or not, it is the duty of the court in every case to give to the jury sitting in that case such instructions as are applicable to the issues raised and sufficient for their guidance in coming to a verdict in the case before them. **Soper vs. Tyler, 73 Conn. 660, 662, 49 Atl. 18; Miller & Co. vs. Lampson, 66 Conn. 432, 34 Atl. 79.** If no request be made that the court charge upon a certain point, and its attention be not called to that point in any way, and its failure to give instructions on that point occur through inadvertance, still the omission will be error if the omitted matter was essential to a legal consideration and disposition of the case by the jury."

**Pietrycka vs. Simolan, 98 Conn. 490, 499, 500; Lindquist vs. Marikle, 99 Conn. 233, 236; Greenberg vs. Branciere, 100 Conn. 565, 569; Bradley vs. Kerns, 106 Conn. 383, 385, 386; Bjorkman vs. Newington, 119 Conn. 181, 185, 186; Sims vs. Smith, 115 Conn. 279, 286; Lovell vs. Bridgeport, 116 Conn. 565, 569; Gross vs. Boston, W. & N. Y. St. Ry. Co. 117 Conn. 589, 596.**

This condition was essential to a legal consideration and disposition of the case by the jury and the failure to submit this element of the case to the jury with adequate instructions was manifest error by the court and the verdict is set aside for this further reason.

Another element of the case involves the doctrine of supervening negligence. This was set up in the complaint, claimed in argument and in requests to charge.

"It is . . . . to be remembered that the application of the doctrine presupposes that the plaintiff has been guilty of negligence." **Correnti vs. Catine, 115 Conn. 213, 216; Montarfrancesco vs. Smith, 105 Conn. 49, 57; Carbone vs. Erott, 100 Conn. 414.**

"If upon the evidence the only claims of proof reasonably open to acceptance are that the plaintiff . . . . was negligent and his negligence continued to the time of the injury and was an efficient cause of it, there is no place in the case for the application of the doctrine." **Correnti vs. Catino, 115 Conn.**

213, 216; Montarfrancesco vs. Smith, supra; Lukesevicia vs. Bartow, 99 Conn. 723; Rooney vs. Levinson, 95 Conn. 466, 468; Radwick vs. Goldstein, 90 Conn. 701, 710.

Upon the evidence in this case the decedent placed himself out upon the travelled part of the road in a bent-over or low position at work upon the left rear wheel of a truck with no light whatever upon it in a cloudy and dark and stormy night with visibility poor and that was negligence and he continued in that position at that work under those conditions until struck and therefore his negligence "continued to the time of his injury and was an efficient cause of it". This case, appears to me, to come well within the discussion in **Correnti vs. Catino, 115 Conn. at Pages 216, 218, et seq.**

It further appears that the defendant operator in the exercise of reasonable care, under all of the conditions, had no reasonable opportunity to discover the decedent in a position of peril in time to avoid injury to him. With the headlights of the approaching car which were far more visible to the decedent than was he and his truck to the defendant operator, such lights should have been seen and the sound of Hutchins' horn, if he sounded it as he testified he did in trying to pass the defendant operator, the sound of the horn should have been heard since Hutchins first overtook the defendants' car around one hundred feet westerly of the railroad underpass and thereafter he tried to pass defendants' car and he then was within such distance that decedent should have heard a horn sounded as claimed by Hutchens.

This doctrine of supervening negligence should not have been given to the jury since the necessary elements to sustain it were not present.

For the several reasons assigned the verdict of the jury is set aside.