## STATE OF CONNECTICUT *v.* MELVIN SIBERON

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued May 7—decision released June 18, 1974

*Louis Stein,* special public defender, for the appellant (defendant).

*Donald A. Browne,* state's attorney, with whom, on the brief, were *Joseph T. Gormley, Jr.,* chief state's attorney, and *Richard F. Jacobson,* assistant state's attorney, for the appellee (state).

HOUSE, C. J. The defendant, Melvin Siberon, was indicted by a grand jury on a charge of murder in the first degree, tried by a jury and found guilty

with a recommendation of a sentence of life imprisonment. The court denied his motion to set aside the verdict as contrary to law and against the evidence and he appealed to this court. On his appeal, he has assigned three errors: (1) that the court erred in denying his motion to set aside the verdict; (2) that it erred in admitting the testimony of Agnes Santana, the daughter of the woman for whose death the defendant was indicted; and (3) that it erred in denying the defendant's motion for a mistrial, made during the jury's deliberations.

The ruling of the trial court on the defendant's motion to set aside the verdict is tested by the evidence printed in the appendices to the briefs. *State* v. *Mullings,* 166 Conn. 268, 269, 348 A.2d 645; *State* v. *Hall,* 165 Conn. 599, 601, 345 A.2d 17. We have reviewed this evidence and find that it amply supports the jury's verdict. Very briefly stated, the jury could find from the evidence that Elizabeth Santana was stabbed to death by the defendant at Bridgeport on November 14, 1970. Witnesses testified that at about 8:30 a.m., on November 14, 1970, Mrs. Santana's three children ran out of their mother's apartment followed by Siberon, who was carrying a knife behind his back. Mrs. Santana died from stab wounds in her back. Agnes Santana, the six-year-old daughter of the victim, testified that she had opened the door of the apartment in response to a knocking and Siberon entered the apartment and stabbed Mrs. Santana as she ran from the bedroom to an inside hall. About 9:15 the same morning, Siberon was taken into custody at his wife's apartment in the same housing complex. He admitted that he had been that morning in the apartment building in which the victim lived. He claimed that a man had accused him of "fooling

around" with his wife and a fight ensued. He knocked on the door of an apartment and a little girl opened the door. He struggled with the man at the doorway to the apartment, the woman in the apartment became involved in the struggle and Siberon pulled out a knife which he was carrying and "started swinging the knife." He admitted that "he stabbed somebody." He disclosed to the investigating police where he had hidden the jacket he was wearing at the time of the stabbing and turned over to them the bread knife which he had used. There was human blood on the blade of the knife. On the basis of this evidence, briefly summarized, the jury could reasonably and logically reach the verdict which they returned.

The defendant claims that the court erred in permitting Agnes Santana to testify, claiming that she was not a competent witness. In the absence of the jury, the court held a hearing to determine whether the girl was qualified to testify. It found that she attended school in the first grade, had a good comprehension of the English language, was an average student, was well oriented, attended church, believed in God and understood the difference between telling the truth and telling a lie. Her teacher testified that she was a bright child, not a disciplinary problem, and understood what it was to tell the truth. The court concluded that Agnes Santana understood the oath of a witness, and, over the objection of the defendant, held that she was competent to testify.

"The competency of a witness is a matter peculiarly within the discretion of the trial court and its ruling will be disturbed only in a clear case of abuse or of some error in law. *State* v. *Orlando*, 115 Conn. 672, 675, 163 A. 256. The considerations which

should govern the determination of competency are the proposed witness' maturity to receive correct impressions by his senses, ability to recollect and narrate intelligently, and ability to appreciate the moral duty to tell the truth. *State* v. *Segerberg,* 131 Conn. 546, 547, 41 A.2d 101; *Kuczon* v. *Tomkievicz,* 100 Conn. 560, 570, 124 A. 226." *State* v. *Manning,* 162 Conn. 112, 115, 291 A.2d 750; see McCormick, Evidence (2d Ed.) § 62; cf. note, 81 A.L.R.2d 386. We find no abuse of discretion on the part of the trial court in its ruling that Agnes Santana was competent to testify in this case.

The defendant's remaining assignment of error is that the court committed error in denying his motion for a mistrial. The record discloses that the court concluded its charge to the jury at 4:30 p.m. Having determined by inquiry that the jury preferred to recess and begin their deliberations in the morning, the court excused them until the next morning at 10 a.m. The court expressly cautioned the jury not to discuss the case with anyone until they reassembled in the morning and not to read any newspaper accounts concerning the trial. The defendant made no request or even suggestion that the jury be sequestered. On the following morning, however, he moved for a mistrial on the ground that the jury had not been kept locked up overnight and stated that an article concerning the trial had appeared in local newspapers during the jury's absence from court. No newspaper articles were placed in evidence nor was any evidence presented that any juror had in fact seen such an article. The court denied the motion for a mistrial.

In his brief, the defendant claims that this ruling constituted a denial of his "right to an impartial

trial." Significantly, no claim is made by the defendant that any juror did, in disregard of the court's instructions, read any newspaper article concerning the case, or that the defendant was in fact in any way prejudiced. His claim is based entirely upon the assertion that jurors absent from the deliberation room "are bound to come in contact with such written and/or spoken material" and "[t]his could result in some form of influence upon one or more individual jurors' judgment, and if this happens, the possibility of an 'impartial jury' disappears in that particular case." As Mr. Justice Holmes observed over sixty years ago in *Holt* v. *United States,* 218 U.S. 245, 251, 31 S. Ct. 2, 54 L. Ed. 1021: "If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day." "Jury sequestration is not a fundamental or constitutionally guaranteed right" and "where there is no objection to the dispersing of jurors and no resulting prejudice, there is no abuse of discretion." *Young* v. *Alabama,* 443 F.2d 854, 856 n.2 (5th Cir.), cert. denied, 405 U.S. 976, 92 S. Ct. 1202, 31 L. Ed. 2d 251; see *State* v. *Savage,* 161 Conn. 445, 448–50, 290 A.2d 221.

It is entirely within the discretion of the trial court to require the jury to remain together until they are discharged. General Statutes § 51-246;[1] see note, 21 A.L.R.2d 1088, entitled "Separation of jury in criminal case." On the record in this case,

[1] "[General Statutes] Sec. 51-246. COURT MAY REQUIRE JURY TO REMAIN TOGETHER IN CERTAIN CASES. In the trial of any capital case or any case involving imprisonment for life, the court may, in its discretion, require the jury to remain together in charge of the sheriff during the trial and until they are discharged by the court from further consideration of the case."

there is no reason to find that the trial court abused its discretion in not requiring that the jurors be sequestered, and we find no error in the court's denial of the defendant's motion for a mistrial.

There is no error.

In this opinion the other judges concurred.