STATE OF CONNECTICUT *v.* ROBERT BOULAY
(10667)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued November 3, 1982—decision released January 25, 1983

*James J. Ruane,* assistant public defender, with whom, on the brief, were *John R. Gulash, Jr.,* and *Neil A. Lieberthal,* assistant public defender, for the appellant (defendant).

*Jonathan C. Benedict,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

SHEA, J. In a trial to a jury the defendant was found guilty of sexual assault in the first degree. General Statutes § 53a-70 (a) (2).[1] The defendant has appealed from the judgment claiming that the trial court erred (1) by adjudging the complainant competent to testify; and (2) by admitting evidence of a lineup identification of the defendant made by the complainant. We find no error.[2]

The complainant, who is mentally retarded, was thirty-two years old and was living alone in an apartment at the time of the assault. In the early evening of November 21, 1979, the defendant knocked on the door of her apartment and forced

---

[1] General Statutes (Rev. to 1979) § 53a-70 (a) (2) provided as follows: "(a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or (2) by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

The "(2)" was deleted in the 1981 revision of § 53a-70 (a).

[2] Since we have determined that the trial court did not err in admitting the testimony of the complainant we have disposed of the defendant's additional claim that the testimony of an expert witness rebutting the defense of mental disease was improperly admitted because it relied in part upon the complainant's testimony.

his way in when she opened the door. Once inside the defendant forced the complainant to engage in vaginal and oral intercourse and threatened to harm her further if she told the police of the incident. The next day the defendant was arrested and at a lineup was identified by the complainant as the assailant.

The defendant assigns as his first claim of error the trial court's determination that the complainant was competent to testify. He contends that the trial court abused its discretion in finding the complainant competent because she lacked a demonstrable understanding of the obligation of an oath. In the alternative, the defendant charges the court erred as a matter of law because it failed to make a specific finding that the complainant understood the obligation of an oath.

As this court has previously stated, the trial court is in a unique position to determine the competency of a witness. The ruling of the trial court on this issue will not be overturned unless the trial court clearly has abused its discretion or has erred as a matter of law. *State* v. *Stankowski,* 184 Conn. 121, 139, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1982); *State* v. *Siberon,* 166 Conn. 455, 457, 352 A.2d 285 (1974); *State* v. *Orlando,* 115 Conn. 672, 675, 163 A. 256 (1932); *Kuczon* v. *Tomkievicz,* 100 Conn. 560, 572–73, 124 A. 226 (1924). In determining the competency of a proposed witness the trial court should consider the capacity of the witness to receive correct sense impressions, to comprehend the facts to be developed, to recollect and narrate facts intelligently, and to appreciate the moral duty to tell the truth. *State* v. *Stankowski,* supra, 139; *State* v. *Rodriguez,* 180 Conn. 382, 389,

429 A.2d 919 (1980); *State* v. *Siberon,* supra, 458. Regarding the duty of truthfulness, this court has explained, "[t]he competent witness must possess some sense of moral responsibility and comprehend the purpose and character of an oath." (Citations omitted.) *Ruocco* v. *Logiocco,* 104 Conn. 585, 590, 134 A. 73 (1926). "An oath . . . signifies the undertaking of an obligation 'to speak the truth at a time when . . . testimony may deeply affect the rights and the character of individuals.' *Chapman* v. *Gillet,* 2 Conn. 40, 44 [1816]." *State* v. *Grant,* 176 Conn. 17, 24, 404 A.2d 873 (1978).

At the competency hearing the judge heard testimony from three witnesses. The first witness was the complainant, who testified that she believed in God and had been raised in the Roman Catholic faith. She defined a lie as "not telling the truth" and knew that lying is prohibited by the Ten Commandments. Regarding her court testimony, she said that God would want her to "be honest" and to "tell the truth." The complainant's mother also testified. She believed her daughter understood her obligation as a witness to testify truthfully. She stated that the complainant would tell the truth unless fearful of reprisal or punishment and indicated that her daughter was somewhat fearful of the trial and specifically fearful of reprisal by the defendant. The court also heard testimony from a clinical psychologist, who personally had treated the complainant for about two years and at the time of trial supervised her treatment. This witness described the complainant as a mildly retarded individual with an IQ of approximately fifty-five, who functioned at a pre-adolescent mentality. He testified that the complainant knew right from wrong and could differentiate between the truth and

a fantasy or a lie. According to the psychologist, rather than lie if she became fearful, the complainant would simply refrain from answering or try to avoid answering the question.

The defendant contends that, despite this evidence demonstrating her appreciation of the oath, the complainant's inability to articulate what would occur if she lied on the stand should render her testimony incompetent. Knowledge of the consequences of perjury is not necessarily a prerequisite to competency; *State* v. *Rodriguez,* supra, 390; especially where the witness has demonstrated an understanding of a duty to tell the truth. We conclude the trial court had sufficient evidence before it to find that the witness understood the purpose of the oath.

The defendant also claims that the trial court erred as a matter of law by failing to make a specific finding that the complainant understood the obligation of the oath. The defendant contends that such a finding is mandated by *Ruocco* v. *Logiocco,* supra. *Ruocco,* however, establishes no such requirement. In that case the trial court admitted as competent the testimony of the complainant even though the record revealed that the witness, a severely retarded woman, had absolutely no comprehension of a duty to tell the truth or of the difference between right and wrong. In reversing the trial court, this court explained, "[i]t does not appear that the court was satisfied that [the witness] understood, in any way, the nature of an oath, the only statement of the court being, 'I think she knows enough to testify.'" Id., 591. In the case at bar, after hearing testimony regarding the ability of the witness to understand her obligation to tell

the truth and to recollect coherently, the trial court ruled that the complainant was a "competent witness" and stated that it was convinced that the witness would decline to answer questions rather than fabricate testimony. This articulation was a sufficient finding that the complainant understood the obligation of the oath. Accordingly, we find no error in the court's determination that the complainant was competent to testify.

As his second claim of error, the defendant charges that the trial court erred in admitting evidence of the complainant's identification of the defendant from a corporeal lineup the day after the assault. The defendant bases his claim on Practice Book §§ 776 and 777, which govern the discovery of nontestimonial evidence from a defendant. Specifically, the defendant claims that under Practice Book § 776,[3] the police were required to obtain a court order prior to including the defendant in the lineup. In the alternative, the defendant relies upon Practice Book § 777,[4] which permits the court,

---

[3] "[Practice Book] Sec. 776. ——AUTHORITY

Upon motion of the prosecuting authority, the judicial authority by order may direct a defendant to participate in a reasonably conducted procedure to obtain nontestimonial evidence under Sec. 775, if the judicial authority finds probable cause to believe that: (1) The evidence sought may be of material aid in determining whether the defendant committed the offense charged; and (2) The evidence sought cannot practicably be obtained from other sources."

[4] "[Practice Book] Sec. 777. ——EMERGENCY PROCEDURE

Upon application of the prosecuting authority, the judicial authority by order may direct a law enforcement officer to bring the defendant forthwith before the judicial authority for an immediate hearing on a motion made under Sec. 775, if an affidavit or testimony shows that there is probable cause to believe that the evidence sought will be altered, dissipated, or lost if not promptly obtained. Upon presentation of the defendant, the judicial authority shall inform him of his rights as specified in Sec. 636 and shall afford him reasonable opportunity to consult with an attorney before hearing the motion."

in certain emergency circumstances and upon motion of the prosecuting authority, to order law enforcement officials to bring the defendant to a hearing on whether he must participate in a discovery procedure for obtaining nontestimonial evidence. Since neither of those procedures was followed, the defendant argues that the admission of the identification was reversible error.

The scope of the rules under which the defendant claims protection is clearly defined and the defendant falls outside its ambit. "The rules for the superior court govern the practice and procedure in the superior court . . . in all criminal *proceedings* . . . ." (Emphasis added.) Practice Book § 1. This court has recognized that judicial criminal proceedings are initiated "'by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *State* v. *Ledbetter,* 185 Conn. 607, 609, 441 A.2d 595 (1981), quoting *Kirby* v. *Illinois,* 406 U.S. 682, 688–89, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972); *State* v. *Packard,* 184 Conn. 258, 267, 439 A.2d 983 (1981). Although this definition of criminal proceedings arose in cases where federal or state constitutional claims were being addressed, we have no reason to believe that the term "criminal proceedings," as used in the rules, was intended to have a broader scope.

At the time of the adoption of Practice Book §§ 776 and 777, *Kirby* v. *Illinois,* supra, which restricted the right to counsel at a lineup to those against whom a criminal proceeding had already been formally commenced, had been decided. See Practice Book, 1963 (as amended to 1977) §§ 2187–88. This court has previously refused to

advance the time when the right to counsel attaches beyond the requirements of *Kirby*. See *State* v. *Ledbetter,* supra, 609–10; *State* v. *Packard,* supra, 267–68.

The rules govern discovery between the "prosecuting authority" and the "defendant," terms which identify the parties to a judicial criminal proceeding. A defendant is one who "is bound to appear and make answer or defend." *Canaan* v. *Greenswoods Turnpike Co.,* 1 Conn. 1, 9 (1814). "A suspect is transformed into a defendant only after formal proceedings have been commenced against him . . . ." *State* v. *Packard,* supra, 272. Only after the initiation of criminal proceedings can it be said that "the government has committed itself to prosecute, and . . . that the adverse positions of government and defendant have solidified." *Kirby* v. *Illinois,* supra, 689. Since the defendant had not been arraigned or otherwise formally charged with a crime at the time of the lineup, he cannot avail himself of the protection of Practice Book §§ 776 and 777. See *State* v. *Christian,* 189 Conn. 35, 454 A.2d 262 (1983); cf. *Wright* v. *Brown,* 167 Conn. 464, 468, 356 A.2d 176 (1975). We recognize that the term "defendant" is used in some of the rules of criminal procedure to refer to one who has not been formally charged. See Practice Book §§ 654, 656–657, 782. In these instances the contexts make it clear that the reference is to prearraignment settings. Sections 776 and 777 involve the assertion of authority by the court upon motion or application of the prosecuting authority and our interpretation is that this procedure is only available after a criminal charge has been formally filed.

There is no error.

In this opinion the other judges concurred.