STATE OF CONNECTICUT *v.* JOHN FALCON
(10662)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

558

Argued April 9—decision released July 2, 1985

*Erskine D. McIntosh,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Donald A. Browne,* state's attorney, with whom, on the brief, was *Dominick J. Galluzzo,* assistant state's attorney, for the appellee (state).

PETERS, C. J. The principal issue in this criminal appeal is whether there is a constitutional right to counsel once extradition proceedings have been instituted. The defendant, John Falcon, was indicted for murder in violation of General Statutes § 53a-54 (a). The trial court accepted a jury verdict finding the defendant guilty as charged, and he has appealed. We find no error.

The jury could reasonably have found the following facts. On June 24, 1979, Edward Moran was stabbed to death in an abandoned building in Bridgeport. He had been tied to a bed that was then set on fire.

The defendant was first apprehended by the police on the day of the crime when he was trying to sell the victim's car for $150. The defendant had previously been sought by the police with respect to an unrelated crime for which the police had an outstanding warrant. Upon interrogation the defendant gave the police two statements, neither of which was directly incrimina-

tory. The police turned the defendant over to the United States army when they discovered that he was absent without leave.

Further inquiries led the police again to suspect that it was the defendant who had slain Moran. An arrest warrant charging the defendant with murder was obtained, and proceedings to extradite him from New Jersey were initiated. The defendant waived extradition and was returned to police headquarters in Bridgeport on September 1, 1979. There the defendant gave the police a written statement admitting that he had stabbed Moran.

At the trial, the court permitted the state, over the defendant's objection, to introduce into evidence all the statements that he had made to the police. The defendant had unsuccessfully challenged their admissibility at a pretrial hearing in which he argued that the statements were not voluntary for a number of reasons, including the absence of counsel.

The trial court also permitted the state to introduce photographic evidence that showed not only the scene of the crime but also the body of the victim. The defendant duly objected that this evidence should have been excluded as inflammatory and unnecessary, but his objection was overruled.

The defendant's appeal from his conviction for murder raises two issues. The defendant argues that: (1) his statements were inadmissible because they were secured in violation of his constitutional right to counsel under the sixth amendment to the United States constitution as applied to the states through the fourteenth amendment and under article first, § 8, of the Connecticut constitution; and (2) the photographs of the victim were inadmissible because they were so inflammatory as to prejudice the defendant's due process right to a fair trial.

## I

The defendant's challenge to the admissibility of his statements rests on the proposition that the statements were made after the commencement of adversary judicial criminal proceedings. The defendant does not claim any violation of his fifth amendment right to counsel during custodial interrogation under *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Relying instead on the sixth amendment to the United States constitution,[1] and article first, § 8, of the Connecticut constitution,[2] he argues that it was improper to elicit self-incriminating evidence in the absence of counsel because formal criminal proceedings had been commenced against him either upon the issuance of an arrest warrant or upon the initiation of extradition proceedings. We disagree.

We have consistently held that a defendant's right to counsel under the sixth amendment or its state constitutional counterpart[3] arises only " 'at or after the initiation of adversary judicial criminal proceedings— whether by way of formal charge, preliminary hearing, indictment, information or arraignment.' *Kirby* v. *Illinois,* 406 U.S. 682, 689, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972)." *State* v. *Vitale,* 190 Conn. 219, 232, 460 A.2d 961 (1983); *State* v. *Ledbetter,* 185 Conn. 607, 609, 441 A.2d 595 (1981); *State* v. *Packard,* 184 Conn. 258,

---

[1] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for his defense."

[2] Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ."

[3] Because the defendant has proffered no argument that the state constitutional provision governing the right to counsel differs in any salient form from that contained in the United States constitution, we analyze the defendant's state and federal claims together. Reference throughout this opinion to the "sixth amendment" should be construed to incorporate both claims.

267, 439 A.2d 983 (1981); see also *State* v. *Boulay,* 189 Conn. 106, 112–13, 454 A.2d 724 (1983). The United States Supreme Court has recently reiterated this formulation and the rationale behind it. "[O]ur conclusion that the right to counsel attaches at the initiation of adversary judicial criminal proceedings 'is far from a mere formalism.' *Kirby* v. *Illinois,* supra, 406 U.S., at 689. It is only at that time 'that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.' Ibid." *United States* v. *Gouveia,* 467 U.S. 180, 189, 104 S. Ct. 2292, 81 L. Ed. 2d 146 (1984); see *State* v. *Vitale,* supra, 233.

Following the initiation of the adversarial process, the defendant is entitled to the presence of counsel at certain crucial proceedings, including interrogation. *Brewer* v. *Williams,* 430 U.S. 387, 401, 97 S. Ct. 1232, 51 L. Ed. 2d 424, reh. denied, 431 U.S. 925, 97 S. Ct. 2200, 53 L. Ed. 2d 240 (1977); *Massiah* v. *United States,* 377 U.S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964); see *State* v. *Vitale,* supra, 231; *State* v. *Jones,* 187 Conn. 504, 506, 446 A.2d 1080 (1982). Resolution of the defendant's claim that he was entitled to counsel at his interrogation thus depends upon whether either the issuance of an arrest warrant or the initiation of extradition, both of which occurred prior to his interrogation, can be said to have commenced formal adversarial judicial proceedings.

The defendant's first claim, which focuses on the issuance of an arrest warrant, is foreclosed by *State* v. *Vitale,* supra, 231–33. There we held that an arrest, whether or not accompanied by a warrant, does not mark the start of adversarial judicial proceedings.

The defendant maintains that *Vitale* should not control for two reasons. First, he asserts that *Vitale* is distinguishable because the defendant in that case was arrested for a crime unrelated to the one for which he was eventually convicted. Our holding in *Vitale,* however, did not rely on the ancillary nature of the arrest. The opinion is unequivocal in espousing the position, shared by other courts, that an interrogation following an arrest, but prior to arraignment or indictment, does not call into play the sixth amendment right to counsel. *State* v. *Vitale,* supra, 232–33; see, e.g., *United States* v. *Purham,* 725 F.2d 450, 454 (8th Cir. 1984); *United States* v. *Guido,* 704 F.2d 675, 676 (2d Cir. 1983); *United States* v. *Duvall,* 537 F.2d 15, 20–22 (2d Cir.), cert. denied, 426 U.S. 950, 96 S. Ct. 3173, 49 L. Ed. 2d 1188 (1976); *United States* v. *Anderson,* 575 F. Sup. 31, 33–34 (S.D.N.Y. 1983); *State* v. *Smith,* 209 Neb. 86, 87, 306 N.W.2d 181 (1981); *State* v. *Judge,* 100 Wash. 2d 706, 714, 675 P.2d 219 (1984); cf. *O'Hagan* v. *Soto,* 725 F.2d 878, 879 (2d Cir. 1984); *United States ex rel. Robinson* v. *Zelker,* 468 F.2d 159, 161 (2d Cir. 1972), cert. denied, 411 U.S. 939, 93 S. Ct. 1892, 36 L. Ed. 2d 401 (1973). In the alternative, the defendant contends that we should reconsider our position in *Vitale,* because in this state, unlike other jurisdictions, the state's attorney is a member of the judicial branch, so that a prosecutorial request for an arrest warrant in Connecticut arguably signals the commencement of "judicial" proceedings. We are not persuaded by this argument. Neither the request of a state's attorney, nor the action of a court in granting that request, converts an arrest warrant into an official accusation signaling the state's commitment to prosecute. Cf. *Lomax* v. *State,* 629 F.2d 413, 416 (5th Cir. 1980), cert. denied, 450 U.S. 1002, 101 S. Ct. 1712, 68 L. Ed. 2d 205 (1981). In sum, the defendant's interrogation in the absence

of counsel following the issuance of a warrant for his arrest did not violate his sixth amendment right to counsel.

The defendant's principal contention is that formal adversarial proceedings were initiated by the commencement of the extradition process. The state obtained a warrant for the defendant's arrest on August 29, 1979. Subsequently, the defendant was arrested in New Jersey and charged with being a fugitive from justice from the state of Connecticut. A hearing was held in New Jersey on August 31, 1979, at which the defendant was informed of the charges against him in Connecticut, and of his rights to formal extradition proceedings and to contest extradition.[4] The defendant agreed to waive extradition and to return to Connecticut.

At the time the state of Connecticut initiated the extradition process, it had not yet formally charged the defendant with murder. Since the defendant was not indicted by a grand jury until October 10, 1979,[5] the charges upon which he was arrested in New Jersey were simply those contained in the information attached to the August 29, 1979 arrest warrant.[6] The respective positions of the state and the defendant were thus no different when extradition was initiated than when the arrest warrant was issued.

The question before us is whether extradition itself triggers so critical a confrontation between an accused and a prosecutor that counsel is constitutionally required for that reason alone. Contrary to the defend-

[4] The defendant was also advised that he had the right, under New Jersey law, to be represented by counsel at this and all other stages of the extradition process. See N.J. Stat. Ann. § 2A:160-18 (West 1971).

[5] At the time in question, General Statutes § 54-45 required a grand jury indictment for the crime of murder.

[6] The defendant was arrested on several charges in addition to the murder for which he was eventually indicted.

ant's argument, the hearing at which he waived formal extradition was not akin to an arraignment at which he would have been entitled to counsel. *Hamilton* v. *Alabama,* 368 U.S. 52, 54–55, 82 S. Ct. 157, 7 L. Ed. 2d 114 (1961). At an arraignment, a defendant is advised of the charges against him and enters a plea. Practice Book § 643. By contrast, at an extradition hearing, a defendant is not asked to plead or to make any other decisions that could affect his right to a fair trial. See *United States* v. *Gouveia,* supra, 188–89; *Gerstein* v. *Pugh,* 420 U.S. 103, 122–23, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975). The defendant's extradition hearing was, of course, procedurally uneventful largely because he waived extradition, but most courts in other jurisdictions have held that even proceedings contesting extradition are not a "critical stage" in the prosecution requiring the presence of counsel. See, e.g., *United States ex rel. Calhoun* v. *Twomey,* 454 F.2d 326, 328 (7th Cir. 1971); *Dunkin* v. *Lamb,* 500 F. Sup. 184, 187 (D. Nev. 1980); *Utt* v. *State,* 293 Md. 271, 286, 443 A.2d 582 (1982); *Reeves* v. *Cox,* 118 N.H. 271,.276, 385 A.2d 847 (1978); but see *State* v.*Mollohan,* 272 S.E.2d 454, 457 (W. Va. 1980); see generally comment, "An Indigent Accused Does Not Have a Constitutional Right to Appointed Counsel at Extradition Hearings: An Analytical Approach," 13 U. Balt. L. Rev. 74, 78 (1983).[7] A hearing contesting extradition is only a summary proceeding, limited to determining whether the necessary documents are in order, whether the petitioner has been charged with a crime, is the person named in the extradition request and is a fugitive from justice. See *Michigan* v. *Doran,* 439 U.S. 282, 289, 99 S. Ct. 530, 58 L.

---

[7] Even though extradition is not itself a "critical stage" requiring the presence of counsel, the filing of formal charges may in certain circumstances be a prerequisite for the initiation of extradition. See General Statutes §§ 54-159, 54-179 (c). In that situation, the defendant arguably would have a cognizable claim for the presence of counsel at an interrogation following the initiation of extradition proceedings.

Ed. 2d 521 (1978); *Barrila* v. *Blake,* 190 Conn. 631, 634, 461 A.2d 1375 (1983). Such a hearing is not "the kind of preliminary inquiry traditionally intervening between the initial arrest and trial." *Michigan* v. *Doran,* supra, 288.

We conclude that the trial court did not err in admitting statements made by the defendant following the issuance of a warrant for his arrest and his waiver of extradition. "Because the statements were taken prior to the commencement of adversary judicial criminal proceedings we find no merit in the defendant's sixth amendment claim." *State* v. *Jones,* supra, 506.

## II

The defendant's second claim of error concerns the admission into evidence over his objection of four photographs and four slides. The photographs depict the scene of the crime. They show the victim's body and the appearance of the room in which it was discovered following the fire. The slides depict the autopsy of the victim. The defendant argues that the pictures were gruesome and should not have been admitted into evidence because they were unnecessary, cumulative and prejudicial. We disagree.

The principles governing the admission of potentially inflammatory photographic evidence are clear. "As this court has stated on a number of occasions, we adhere to the general rule that photographs which 'have a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry' are not rendered inadmissible simply because they may be characterized as 'gruesome.' . . . When, however, an initial determination is made by the trial court that such photographs may have the tendency to prejudice or inflame the jury, the admissibility of such evidence is dependent upon the trial court's determination as to whether their value as evidence outweighs their pos-

sible prejudicial effect. . . . Since the trial court exercises its broad discretion in such circumstances, its determination will not be disturbed on appeal unless a clear abuse of that discretion is shown." (Citations omitted.) *State* v. *Piskorski,* 177 Conn. 677, 700–701, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); see *State* v. *DeJesus,* 194 Conn. 376, 381–82, 481 A.2d 1277 (1984); *State* v. *Haskins,* 188 Conn. 432, 452, 450 A.2d 828 (1982); *State* v. *Smith,* 174 Conn. 118, 122–23, 384 A.2d 347 (1977).

We have consistently rejected challenges to photographic evidence on the grounds of insufficient evidential value. *State* v. *DeJesus,* supra, 385; *State* v. *Bember,* 183 Conn. 394, 408 n.5, 439 A.2d 387 (1981); *State* v. *Piskorski,* supra, 701. The issue is not whether the pictures were absolutely necessary to the prosecution's case but whether they were relevant. *State* v. *DeJesus,* supra, 381; *State* v. *Piskorski,* supra, 701. The trial court ruled the pictures relevant on the issue of intent. " 'Intent is a mental process which ordinarily can be proven only by circumstantial evidence. An intent to cause death may be inferred from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death.' " (Citations omitted.) *State* v. *DeJesus,* supra, 383–84, quoting *State* v. *D'Antuono,* 186 Conn. 414, 423, 441 A.2d 846 (1982). In this case, although there was other evidence describing the scene of the fire and the wounds inflicted on the victim, we cannot conclude that the trial court erred in concluding that the photographs were probative and not merely cumulative.

The trial court also concluded that the probative value of the pictures on the issue of intent outweighed their potential for prejudice. " '[T]he prosecution, with its burden of establishing guilt beyond a reasonable doubt, is not to be denied the right to prove every essential

element of the crime by the most convincing evidence it is able to produce.' " *State* v. *Smith,* 185 Conn. 63, 88, 441 A.2d 84 (1981), quoting *State* v. *Piskorski,* supra, 701–702. Although the proper balance in this case is a close question, we cannot find an abuse of discretion in the trial court's decision to admit the pictures into evidence. See *State* v. *Piskorski,* supra, 701.

There is no error.

In this opinion the other judges concurred.