[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The facts relevant to this motion to suppress are not in serious dispute. The robbery for which the defendant is now on trial occurred on April 16, 1994, at approximately 2:15 a.m. at the home of the victim, Paul Levine, in Redding, Connecticut. CT Page 9200 Sometime in 1995, the defendant was arrested in New York for robberies which had occurred in that state. The defendant was tried and convicted on the New York charges, and on June 23, 1995, he was sentenced to 12 1/2 to 25 years for those crimes. The defendant was represented by counsel during the first New York trial.[1]
On October 16, 1995, while the defendant was serving his sentence in New York, the State of Connecticut requested his transfer to Connecticut for the purpose of commencing criminal proceedings against him for the April 16, 1994 robbery.[2] On April 21, 1996, the State filed an information against the defendant on the Connecticut charges. The defendant invoked his right to a transfer hearing (extradition hearing) and appeared in the Dutchess County Supreme Court on April 23, 1996, at which time he was represented by counsel. At the conclusion of the extradition hearing, Perez was ordered transferred to Connecticut.
Sometime in April, 1996, David Wagner, a Connecticut state trooper, requested an interview with the defendant by telephone. The defendant, through personnel at the correctional facility in which he was detained, refused to speak with him. On May 23, 1996, Wagner and another officer arrived at the New York correctional facility for the purpose of transporting the defendant to Connecticut. Wagner orally advised the defendant of his Miranda rights and, after telling Wagner that he understood those rights, the defendant thereafter made certain inculpatory statements to the detectives. When asked by the detectives to sign a written statement reciting the inculpatory statements, the defendant refused, stating that he wished to speak with the prosecuting attorney.
During this trial on charges stemming from the April 16, 1994 robbery, the defendant has moved to suppress the statements he made while in the car with the detectives. The defendant argues that: (1) his right to counsel under both the federal and state constitutions attached at the filing of the information in Connecticut on April 21, 1996; (2) the interrogation by the detectives in the car ride from New York to Connecticut was impermissible because he "was represented by counsel, had declined to speak with Connecticut police regarding the Connecticut charges previously, and had neither expressly nor impliedly waived his right to counsel"; and (3) Detective Wagner's interrogation of the defendant was constitutionally CT Page 9201 impermissible since it was designed to elicit incriminating statements from him in violation of the Supreme Court's ruling inRhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682,64 L.Ed.2d 297 (1980). In response, the State argues that the defendant's right to counsel had not yet attached at the time the inculpatory statements were made to the detectives, and had it, the defendant had not yet invoked it.
This case presents an interesting question of when a defendant's right to counsel attaches, and what effect the representation of the on unrelated charges in another jurisdiction and again an extradition hearing has on the defendant's right to counsel new charges.
The court begins with the observation that a defendant's right to counsel arises out of both the sixth amendment to the United States constitution, as applied through thefourteenth amendment, and article first, § 8 of the Connecticut constitution. State v. Palmer, 206 Conn. 40, 64. "The time of the attachment of the right to counsel is no different under [either constitutional provision]. . . ." State v. Lewis, 220 Conn. 602,612.
The United States Supreme Court has held that a defendant's right to counsel is "offense-specific" and does not attach until "`at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" McNeil v.Wisconsin, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158
(1991), quoting Kirby v. Illinois, 406 U.S. 682, 689,92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The Connecticut Supreme Court has also so held. State v. Birch, 219 Conn. 743, 747.
The issue in this case is when "adversary judicial criminal proceedings" were commenced against the defendant requiring counsel to be present for any custodial interrogation. While the defendant may be in custody on an unrelated criminal matter, that representation in that other matter does not affect his right to counsel in connection with a new matter in which criminal charges have not yet been filed. State v. Palmer, supra. This is certainly applicable to the present case; the fact that the defendant was in custody in a New York correctional institution had no bearing on his right to counsel in the instant matter. Similarly, the Connecticut Supreme Court has held that there is no constitutional right to counsel at an extradition hearing. CT Page 9202State v. Falcon, 196 Conn. 557, 563-64. The court in Falcon held that an extradition hearing is not similar to an arraignment such that counsel is required, explaining therein that:
 At an arraignment, a defendant is advised of the charges against him and enters a plea. Practice Book § 643. By contrast, at an extradition hearing, a defendant is not asked to plead or to make any other decisions that could affect his right to a fair trial. . . . [M]ost courts in other jurisdictions have held that even proceedings contesting extradition are not a `critical stage' in the prosecution requiring the presence of counsel. . . . A hearing contesting extradition is only a summary proceeding, limited to determining whether the necessary documents are in order, whether the petitioner has been charged with a crime, is the person named in the extradition request and is a fugitive from justice.
There is, however, in Connecticut, a statutory right to counsel at an extradition hearing. General Statutes Sec. 51-296.[3]
In fact, defendant in this case was represented by a public defender at his extradition hearing. The defendant cites no cases, and the court's independent investigation has not revealed any cases which hold that the right to counsel at an extradition proceeding carries over into the prearraignment criminal process in the second criminal matter.[4]
The question, then, is whether the defendant's right to counsel had attached at the filing of the information on April 21, 1996. The defendant argues that it did, relying on the language from McNeil v. Wisconsin, supra, 501 U.S. 175, which states that the right to counsel commences "`at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge preliminary hearing, indictment, information, or arraignment.'" (Emphasis added.) The Connecticut Supreme Court has never specifically rejected the proposition that the filing of an constitutes the commencement of adversarial judicial proceedings within the meaning of sixth amendment
jurisprudence. The Appellate Court has, however, impliedly rejected that position by concluding that a defendant's right to counsel does not attach until arraignment. State v. Curley,25 Conn. App. 318, 323. ("In this case, the defendant's right to counsel under the sixth amendment attached at his arraignment. . . .")
Significantly, the Supreme Court has implied that the right CT Page 9203 to counsel may attach at the time of the filing of an information, but that the right is not effective unless the defendant specifically invokes that right. See State v. Lewis, supra, 612-13 ("Even if the defendant is correct and his right to counsel had attached [when the information was filed], his ensuing statements would not be rendered inadmissible under thesixth and fourteenth amendments unless he had invoked thatright. . . . Because the defendant had not yet been arraigned and had adequately waived his right to counsel, as he did his Miranda
rights, the fact that his rights . . . existed would not require the suppression of his statements.") (First emphasis added.) See also State v. Vitale, 190 Conn. 219, 231. ("[The defendant] seeks to analogize his situation then to that of a defendant who has been formally charged with a crime by indictment or information. From such a defendant the government may not elicit self-incriminating evidence in the absence of counsel.")
Notwithstanding the murky guidance from the state appellate courts, this court concludes that the defendant's right to counsel under the state and federal constitutions did not attach at the time of the filing of the information by the state's attorney because it did not signal the commencement of adversary juridical criminal proceedings. As the Supreme Court observed inState v. Falcon, supra, the defendant is not formally charged with a crime and does not enter a plea until his arraignment. Until that time, there cannot be said to have been an adversarial judicial proceeding. Notably, an information is ex parte in nature, often filed by the state's attorney without the defendant's knowledge; in this sense, it may be more accurately considered a prelude to a criminal prosecution rather than an adversary proceeding in which the defendant faces charges in open court, at which time counsel is undoubtedly necessary. Accordingly, the court holds that the filing of an information by a state's attorney is not a critical proceeding within the meaning of the sixth and fourteenth amendments to the federal constitution and article first, § 8 of the Connecticut constitution.
Having concluded that the defendant's sixth amendment right to counsel had not attached at the time of the filing of the information, the court must now address the defendant'sfifth amendment claims. The defendant has asserted that the questioning by Detective Wagner violated his fifth amendment right to be free from intrusive custodial interrogation designed to elicit incriminating statements. CT Page 9204
Even when a defendant's sixth amendment right to counsel has not yet attached, he still possesses fifth amendment rights. SeeState v. Jones, 205 Conn. 638, 647-50, for an interesting discussion of the distinction between the right to counsel under the fifth and sixth amendments to the federal constitution. "In the jurisprudence of statements made to the police by persons accused of crime, traditionally there are two types or `voluntariness' inquiries. One, dating from before Miranda and emanating from principles of due process, involves essentially whether the defendant's will was overborne by the police in eliciting the statement. . . . The other, deriving from Miranda, involves essentially whether, when the police interrogate a suspect who is in their custody, they properly administer theMiranda warnings to him and he waives the rights about which he was warned." (Citations omitted) State v. Piorkowski, 236 Conn. 388,404-05.
In the instant proceeding, there is no dispute that the defendant was advised of his Miranda rights prior to or shortly after entering the car with the detectives. The question, the defendant asserts, is whether, in light of the close custody under which the defendant was held and the type of questioning the detectives engaged in, the defendant could have executed an effective waiver of his fifth amendment rights. On the issue of proving waiver of constitutional rights, the state bears the burden. State v. Jones, supra. The defendant also correctly asserts that the court is to indulge every "reasonable presumption against the waiver of fundamental constitutional rights."
"The inquiry whether the defendant has made a knowing, voluntary and intelligent waiver of his fifth amendment right has two distinct dimensions. . . . First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." (Citations omitted; internal quotation marks omitted.) State v. Jones, supra, 205 Conn. 655. Applying these principles, the court finds that the defendant did CT Page 9205 effectively waive his rights when he made the inculpatory statements to Detective Wagner. He not only acknowledged his understanding of his rights, but refused to utter a written statement until he saw a prosecuting (sic) attorney. It requires no mental gymnastics to recognize a motivation to reach an agreement with that official. In short, the defendant knew exactly what he was doing and did, in fact, give up his right to counsel at that time.
The defendant's argument that his refusal to speak to Detective Wagner more than one month before the car ride precluded the police from questioning him outside the presence of counsel is not in accordance with the law. Although it is true that once a suspect invokes his fifth amendment right to counsel — right which attaches even before hissixth amendment right to counsel attaches — he may not be interrogated outside the presence of counsel; State v. Birch,
supra, 749, quoting Edwards v. Arizona, 451 U.S. 477,101 S.Ct. 1880, 68 L.Ed.2d 378, reh. denied, 452 U.S. 973, 101 S.Ct. 3128,69 L.Ed.2d 984 (1981); if a suspect merely refuses to speak with the police while in custody, the police can questioning after the passage of a certain amount of State v. Stanley, 223 Conn. 674, 685, approving the trial decision based upon Michigan v. Mosley, 423 U.S. 96,96 S.Ct. 321, 46 L.Ed.2d 313 (1975). In this case, the defendant did invoke his fifth amendment right to counsel when Detective Wagner called him at the New York correctional institution; he merely refused to speak with Wagner. Accordingly, the police were free to reinstate questioning with the defendant after the passage of a sufficient amount of time and provided he was advised once again of his Miranda rights. The court believes that the approximate one-month period between the time the defendant refused to speak by telephone with Detective Wagner and the time he was transported to Connecticut is a sufficient period of time.
In conclusion, the court rejects the defendant's claims that his inculpatory statements made during his transportation from New York to Connecticut were obtained by the police in violation of his fifth and sixth amendment rights, as well as his corresponding rights under the Connecticut constitution, and, accordingly, denies his motion to suppress.
Moraghan, J.