## STATE OF CONNECTICUT *v.* ROLAND GAINER
### (AC 16166)

Lavery, Hennessy and Sullivan, Js.

Argued September 21, 1998—officially released January 26, 1999

*John M. Barton III*, special public defender, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James Dinnan*, assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Roland Gainer, appeals from judgment of conviction, rendered after a court trial, of robbery in the first degree in violation of General Statutes § 53a-134, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134, burglary in the first degree in violation of General Statutes § 53a-101, conspiracy to commit burglary in violation of General Statutes §§ 53a-48 and 53a-101, larceny in the second degree in violation of General Statutes § 53a-123, conspiracy to commit larceny in the second degree in violation of General Statutes §§ 53a-48 and 53a-123 and risk of injury to a child in violation of General Statutes § 53-21. The defendant claims that the trial court improperly (1) ruled that a five year old child was competent to testify when a competency hearing failed to demonstrate that

the witness had the ability to relate the events of the incident that occurred over a year earlier and the witness' trial testimony showed his inability to do so and (2) inferred essential facts from its disbelief of the defendant's testimony and his failure to call witnesses to support his alibi, whereby the trial court's findings of guilt were not supported by evidence proven beyond a reasonable doubt. We affirm the judgment of the trial court.

The following facts are relevant to the disposition of this appeal. The victim, Wanda Matos, was residing at an apartment on Chapel Street in New Haven in December, 1994. On Friday, December 9, 1994, Matos was at home with her then four year old son, Joaguim Rogers, her cousin's nine year old son and a seventeen year old friend when the defendant, who was known to Matos, and an unidentified man entered the apartment. While Rogers was sitting on Matos' lap, the unidentified man grabbed Matos' hair, put a gun to her head and demanded her jewelry and money. The unidentified man then took Matos' jewelry from her person. During this encounter, Rogers was yelling and became hysterical, causing the unidentified man to become nervous and to say to the defendant, "Let's go, let's go." The defendant ignored him, demanded to be given the gun and said, "I feel like shooting this bitch. I should shoot you, bitch." Rogers continued crying and screaming and the defendant told Matos that if she did not quiet him, he would.

The defendant next demanded Matos' money and threatened to shoot her if she did not comply. Matos told the two men that there was a bag containing $8000 under a brick outside the window.[1] One of the men

[1] At trial, Matos testified that she was collecting money from acquaintances of her boyfriend, Edward "Boo" Andrews, in order to post bond for Andrews, who was in jail and charged with murder. Matos was eight months pregnant with Andrews' child at the time of the robbery.

retrieved the money, and both men left. Matos ran downstairs to a restaurant on the first floor of the building, where someone called the police and Matos reported the crime.

When the police arrived soon thereafter, Matos told them she had been robbed at gunpoint, named the defendant as a perpetrator and gave his description.[2] Other witnesses told police that they saw two males exit the door next to the restaurant and saw them get into a small, beat-up four door vehicle with one taillight out and Connecticut license plates, which was driven by a black female named Audrey. Matos later identified the defendant's picture but never followed up by going to the precinct to give the police a statement.

An arrest warrant was procured, and the defendant was subsequently arrested. He waived his right to a jury trial and was tried to the court in February, 1996. The defendant was convicted on all charges. This appeal was taken from that judgment.

I

The defendant first claims that the trial court improperly ruled that a five year old witness was competent to testify. Specifically, the defendant argues that the trial court abused its discretion in determining that Rogers, the five year old son of the victim, was competent to testify, despite the witness' inability to recount basic details regarding the events at issue in this trial. We disagree.

Prior to the commencement of trial, the court held a hearing to determine whether Rogers was competent

---

[2] Matos identified the assailants as "Ro" and "Snag A Tooth." At trial, the defendant testified on his own behalf that he was not in New Haven at the time of the incident but was at his father's house in New Jersey. In addition, Matos told police that the perpetrators took only $1000 because she thought that the police might have thought that she was selling drugs because of her known relationship with Andrews.

to testify.[3] During the competency hearing, the prosecutor asked Rogers a series of questions to determine whether he understood the difference between telling a lie and telling the truth and whether he knew that he would be punished if he did not tell the truth. Rogers responded that he promised to tell the truth. Thereafter, the state attempted to have Rogers sworn in as a witness, to which defense counsel objected, claiming that the proper showing regarding competency had not been made. The trial court agreed, which prompted the state to then ask Rogers whether he understood that he was in court, who the judge was and that it was important to tell the truth to the judge. Defense counsel again objected and questioned Rogers' ability to testify primarily on the basis of his age.[4] The trial court determined that it was satisfied that the witness had met the legal requirements for competency, noted the defendant's exception and then swore in Rogers as a witness.

---

[3] General Statutes § 54-86h provides in relevant part: "No witness shall be automatically adjudged incompetent to testify because of age and any child who is a victim of assault . . . shall be competent to testify without prior qualification. The weight to be given the evidence and the credibility of the witness shall be for the determination of the trier of fact."

[4] Defense counsel expanded on his objection stating: "Well, I just think he is too young. I think that he has given all the right answers and—but, it seems to me that the law on this focuses on not so much the general ability to tell the truth but appreciating the meaning of an oath . . . . And again going back to the idea that this witness is now five, almost six and being asked to relate to an incident occurring at a time when he was four almost five. . . . I think it is pushing things to say that he could be a competent witness as we normally think of them in a court of law." Soon thereafter, defense counsel reiterated: "Your Honor, apparently [the assistant state's attorney indicated that] besides the victim in this particular case there are only a couple of police officers who would obviously be testifying of what they were told after the incident. They weren't present as witnesses. So, this witness becomes an extremely important one. And one in addition is not an uninterested witness in the sense that presumably the child has been with the mother since the date of the incident. They probably have talked about what took place. I assume they would. All of which adds up to creating an extremely difficult situation to ask a five year old child to come in here and relate something again that occurred in a stressful situation when he was four years old. And I would object to it on that basis."

The defendant now claims that the trial court improperly deemed the witness competent to testify because the witness failed to relate the events of the incident at issue during the competency hearing. A close review of the transcript indicates, however, that while the defendant objected to the witness' being deemed competent to testify on numerous grounds, he did not object specifically to the witness' failure to demonstrate an intelligible recollection of the facts. Because the defendant made numerous objections, however, he may have believed that he objected on this ground, and, therefore, we will review the evidentiary claim.[5]

Our Supreme Court has stated that "[i]n determining the competency of a proposed witness the trial court should consider *the capacity* of the witness to receive correct sense impressions, to comprehend the facts to be developed, to recollect and narrate facts intelligently, and to appreciate the moral duty to tell the truth. . . . *State* v. *Boulay*, 189 Conn. 106, 108, 454 A.2d 724 (1983)." (Emphasis in original; internal quotation marks omitted.) *State* v. *Weinberg*, 215 Conn. 231, 242, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990).

On the issue of the measure of capacity required for a determination of competency, we look for guidance to the federal courts. "Rule 601 of the Federal Rules of Evidence provides that, except where otherwise provided by the rules, '[e]very person is competent to be a witness . . . .' Pursuant to this rule, the federal courts treat questions of competency as simply one aspect of the credibility of a witness. 3 J. Weinstein & M. Berger, Evidence § 601[05]. Federal Rule 601 has not been construed, however, as eliminating a court's power to prevent a witness from testifying. To the contrary, a court maintains the obligation to ensure that

---

[5] See footnote 4.

a witness' testimony meets the minimum standard of credibility necessary to permit a reasonable person to put any credence in that testimony. As noted commentators have acknowledged: 'In making this determination the court will still be deciding competency. It would, however . . . be more accurate to say that the court will decide . . . minimum credibility. This requirement of minimum credibility is just one aspect of the requirement of minimum probative force—i.e., relevancy. Regardless of terminology, the trial judge may exclude all or a part of the witness' testimony on the ground that no one could reasonably believe the witness could have observed, remembered, communicated or told the truth with respect to the event in question.' 3 J. Weinstein & M. Berger, supra, § 601[01]." Id., 242–43.

Rule 601, "as applied by the federal courts, establishes a reasoned approach to determining the admissibility of a witness' testimony." Id., 243. The *Weinberg* court adopted "the rule that where the competency of a witness is challenged, the threshold question to be answered by the court is whether the testimony of that witness is minimally credible. If the testimony of a witness passes the test of minimum credibility, and is otherwise relevant, the testimony is admissible and the weight to be accorded it, in light of the witness' incapacity, is a question for the trier of fact." Id., 243–44.

In his brief, the defendant points to inconsistencies in the witness' testimony to support his claim that the trial court improperly determined that the witness was competent to testify because the witness failed to demonstrate an ability to comprehend intelligently the facts at issue. The defendant specifically refers to testimony in which the witness stated that the event in question took place in the summer because "it was raining" and that he looked out the window and saw the police catch the defendant and the other man, handcuff them and put them in a police car. Upon redirect examination,

the witness altered his testimony and said that he did not see the defendant arrested and handcuffed because he was in the bathroom. The record makes it clear, however, that the incident occurred on December 9, 1994, and that the defendant was not arrested on the charges in this case until four months later.

The defendant's focus on the inconsistencies in the witness' testimony is in essence an attack on the witness' credibility. *State* v. *Bonello*, 210 Conn. 51, 70, 554 A.2d 277, cert. denied, 490 U.S. 1082, 109 S. Ct. 2103, 104 L. Ed. 2d 664 (1989). "Inconsistencies in testimony and witness credibility are matters that are within the exclusive purview of the [trier of fact] to resolve at trial." *State* v. *Smith*, 46 Conn. App. 600, 608, 700 A.2d 91, cert. denied, 243 Conn. 935, 702 A.2d 642 (1997). The defendant correctly points out that the witness' testimony was inconsistent. These inconsistencies, however, neither demonstrate that the witness does not have an intelligent comprehension of the facts, nor prevent the witness from meeting the minimum credibility requirement. See *State* v. *Weinberg*, supra, 215 Conn. 244–45 (despite fact that witness experienced uncontrollable delusions and auditory and visual hallucinations, including hallucinations about defendant, court held that trial court did not abuse its discretion in finding that witness possessed sufficient powers of observation, recollection, narration and truthfulness to meet threshold requirement of minimum credibility). Inconsistencies do not render a witness' testimony incredible as a matter of law. *State* v. *White*, 229 Conn. 125, 143–44, 640 A.2d 572 (1994); see also *State* v. *Anonymous (83-FG)*, 190 Conn. 715, 722, 463 A.2d 533 (1983).

Furthermore, a failure to demonstrate an intelligible recollection of the facts at issue can later be rectified through the witness' testimony.[6] See *State* v. *Rodriguez*,

---

[6] Even if the trial court had improperly determined that the witness was competent to testify, the defendant must demonstrate that this error was

180 Conn. 382, 391, 429 A.2d 919 (1980) (even though proper foundation had not been laid establishing competency at preliminary hearing, had testimony later been given to satisfy the applicable test, any error in preliminary ruling would not be considered harmful). Here, the witness demonstrated that he was able to recollect and narrate the facts intelligently.

During the competency hearing, the witness accurately related that he came to court that morning by train, that he had a one year old brother, that he was five years old and was going to be six, that the color of the prosecutor's pen was white and that there was a judge in the courtroom. The witness further demonstrated that he appreciated a moral duty to tell the truth, that it was bad to lie and he would be punished if he lied and he promised to tell the truth.

Thereafter, on direct examination, the witness testified that "two guys" came into his mother's apartment, that he knew only one and identified that person as the defendant. The witness also testified that the defendant had a gun in his hand, "pointed the gun at my mommy" and that he was sitting on his mother's lap when the defendant held the gun to his mother's head. Further questioning of the witness by the state elicited that no one had "shot a bullet out of the gun" and that the defendant and the other man took jewelry from his mother and money from outside the window. This testimony by the witness corroborated his mother's testimony. Furthermore, any inconsistencies in this witness' testimony were not so substantial as to alter the trial court's judgment of the credibility of this important

harmful by including in his brief those portions of the transcript of the witness' testimony that evidence the witness' inability to comprehend intelligently the facts sought to be developed or to recollect and narrate intelligently those facts. This was not done. It was demonstrated, as set out in this opinion, that any deficiency regarding a shown ability to comprehend facts intelligently was satisfied by testimony later given.

prosecution witness. See *State* v. *Green*, 194 Conn. 258, 266, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985). It is for the trier of fact, in this case, the trial court, to decide whether to believe all or a part of a witness' testimony and to determine the credibility of the witness. See *State* v. *Sirimanochanh*, 31 Conn. App. 452, 455, 625 A.2d 832 (1993); see also *State* v. *McCarthy*, 197 Conn. 166, 179, 496 A.2d 190 (1985).

"Because the competency of a witness is a matter peculiarly within the discretion of the trial court, its ruling will be disturbed only in a clear case of abuse or of some other error in law. *State* v. *Siberon*, 166 Conn. 455, 457, 352 A.2d 285 (1974); *State* v. *Orlando*, [115 Conn. 672, 675, 163 A. 256 (1932)]; *Kuczon* v. *Tomkievicz*, 100 Conn. 560, 572–73, 124 A. 226 (1924)." *State* v. *Rodriguez*, supra, 180 Conn. 389. We cannot say that, under these facts, the court abused its discretion in determining that the witness was able to receive correct sense impressions, to comprehend facts to be developed, to recollect and narrate facts intelligently and to appreciate the moral duty to tell the truth in order to meet the threshold requirements of minimum credibility. We, therefore, conclude that the trial court did not abuse its discretion in finding the witness competent to testify at trial.

## II

The defendant next claims that the trial court improperly inferred essential facts from its disbelief of the defendant's testimony and his failure to call witnesses to support his alibi, whereby the trial court's findings of guilt were not supported by evidence proven beyond a reasonable doubt. Although the defendant did not preserve this issue for review, "[o]ur Supreme Court has stated that sufficiency of the evidence claims necessarily meet the four prongs of *Golding*. *State* v. *Adams*,

225 Conn. 270, 275–76 n.3, 623 A.2d 42 (1993). . . . *State* v. *Adorno*, 45 Conn. App. 187, 194, 695 A.2d 6, cert. denied, 242 Conn. 904, 697 A.2d 688 (1997)." (Internal quotation marks omitted.) *State* v. *Blocker*, 46 Conn. App. 734, 740, 700 A.2d 1186, cert. denied, 243 Conn. 946, 704 A.2d 799 (1997).

The defendant essentially argues that the evidence presented failed to establish beyond a reasonable doubt his participation in the crimes for which he was convicted. He argues that the trial court, while stating its findings of fact in support of its judgment of guilt, improperly expressed disbelief in the defendant's alibi that he was not in New Haven at the time of the incident and then used that disbelief to conclude the opposite to be true. The defendant claims, therefore, that the trial court's statements improperly "diluted the requirement that a criminal conviction can only be supported by proof beyond a reasonable doubt" in violation of the fifth, sixth and fourteenth amendments to the United States constitution and article first, § 8, of the constitution of Connecticut. We disagree.

"When reviewing sufficiency of the evidence claims, we impose a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. . . . Second, we determine whether, from that evidence and all the reasonable inferences which it yields, a [trier of fact] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt. . . . *State* v. *Laws*, 37 Conn. App. 276, 281, 655 A.2d 1131, cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995)." (Internal quotation marks omitted.) *State* v. *Blocker*, supra, 46 Conn. App. 740–41.

To support his insufficiency argument, the defendant claims that the trial court, as fact finder, improperly concluded from its disbelief of the defendant's alibi that the defendant was present at the time of the incident. The defendant claims further that this effectively diluted the state's burden to prove its case beyond a

reasonable doubt. The trial court's statement at issue here is: "The alibi was at least very convenient. The crime was the ninth; the alibi wrapped around the ninth, eighth, ninth and tenth. Although, the court had no knowledge as to the availability of these witnesses and therefore did not attempt to draw a *Secondino* inference, it was clear that had the defendant produced several witnesses, he could strengthen his case, but he didn't have them there. The woman who kicked him out, the stepmother, [his two sisters], Sonny Garrett. No attempt was made to call any of them [or] the two cousins he supposedly drove to Georgia with." We agree with the defendant that this comment was improper.

"It is axiomatic under Connecticut law that, while a [trier of fact] may reject a defendant's testimony, 'a [trier of fact] in rejecting such testimony cannot conclude that the opposite is true.' *State* v. *Alfonso*, 195 Conn. 624, 634, 490 A.2d 75 (1985), quoting *Novak* v. *Anderson*, 178 Conn. 506, 508, 423 A.2d 147 (1979); see also *State* v. *Carter*, 196 Conn. 36, 50, 490 A.2d 1000 (1985) (*Shea, J.*, dissenting) (trier cannot make affirmative factual finding from disbelief of testimony); *State* v. *Mayell*, 163 Conn. 419, 426–27, 311 A.2d 60 (1972) (jury cannot make affirmative finding from disbelief of obviously concocted alibi testimony of defendant). Thus, under Connecticut law, the [trier of fact] is not permitted to infer, from its disbelief of the defendant's testimony, that any of the facts which he denied were true." *State* v. *Coleman*, 14 Conn. App. 657, 671–72, 544 A.2d 194, cert. denied, 208 Conn. 815, 546 A.2d 283 (1988).

While we agree with the defendant that the trial court made an improper comment regarding the lack of additional alibi witnesses and possibly improperly inferred essential facts from its disbelief of the defendant's testimony and his failure to call witnesses to support his alibi, "[t]his assumption, however, does not end the inquiry because such an error is harmless if the

reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. . . . *State* v. *Tucker*, 226 Conn. 618, 624, 629 A.2d 1067 (1993); see *State* v. *Cerilli*, 222 Conn. 556, 584, 610 A.2d 1130 (1992)." (Internal quotation marks omitted.) *State* v. *Faust*, 237 Conn. 454, 470, 678 A.2d 910 (1996).

After careful consideration of the whole record, we are persuaded that any impropriety in the trial court's statements in its findings of fact to support its judgment of conviction was harmless beyond a reasonable doubt. Abundant evidence adduced at trial established that the defendant had committed the crimes with which he was charged. The state produced two eyewitnesses, the victim and her five year old son, who each testified that the defendant was one of the perpetrators. Both of these witnesses further testified that the defendant had entered Matos' apartment, placed a gun to her head while her son was sitting on her lap, threatened to shoot her and the child and took jewelry from her person as well as the bag of money that was outside a window. Matos additionally testified that the day before the incident, she saw the defendant in her neighborhood and he was speaking with a mutual friend who knew that Matos was getting money together to post bond for her boyfriend.[7] "The trier of fact determines with finality the credibility of witnesses and the weight to be accorded their testimony. *State* v. *Crump*, 201 Conn. 489, 491, 518 A.2d 378 (1986). Any part of a witness' testimony may be believed or disbelieved by the trier of fact. *State* v. *Rothenberg*, 195 Conn. 253, 257, 487 A.2d 545 (1985); see also *State* v. *Amarillo*, 198 Conn.

---

[7] Furthermore, the trial court expressed concern about the credibility of the defendant's alibi defense because of conflicting testimony of the defendant and his father. A review of the transcript reveals that the defendant's father testified that the defendant came to visit him "every Thursday," while the defendant testified that he could not remember when he last visited his father prior to December, 1994.

285, 289, 503 A.2d 146 (1986). This court does not retry the case or evaluate the credibility of the witnesses. *State* v. *Amarillo*, supra [289]." (Internal quotation marks omitted.) *State* v. *Taylor*, 23 Conn. App. 426, 429, 580 A.2d 1004 (1990). Therefore, viewed in a light most favorable to sustaining the trial court's verdict, the evidence clearly established the defendant's guilt beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.